Heather Weine Brochin, Esq.
Day Pitney LLP
8 Sylvana Way
Parsippany, NJ 07054
(973) 966-8199
hbrochin@daypitney.com

**ATTORNEYS FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COHESITY, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> LAURA KELLY, an individual, and DOES 1 through 50, <br><br> Defendants. | Civil Action No.   3:26-cv-644 <br> _____ <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Cohesity, Inc. ("Cohesity" or the "Company") hereby brings this complaint against Laura Kelly ("Kelly") and Does 1-50 ("Does") (collectively, "Defendants"). Cohesity alleges as follows:

### THE PARTIES

1. Plaintiff Cohesity is a Delaware corporation with its principal place of business at 2625 Augustine Drive, Santa Clara, CA 95054. Cohesity can be served through its registered agent, the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

2. Defendant Kelly is a resident of New Jersey. During the operative times mentioned in this Complaint, up to January 16, 2026, Kelly was employed by Cohesity.

3. The true names and capacities of Defendants Does 1 through 50, inclusive, are unknown to Cohesity at this time, and Cohesity will ask leave of Court to amend this Complaint when the same shall have been ascertained.

124444644.6

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.  And because the remaining counts are so related to the federal-law claim that they form part of the same case or controversy, this Court has supplemental jurisdiction over those counts pursuant to 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over the Kelly because she is a resident of New Jersey.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this district.  Venue in this district is proper under 28 U.S.C. § 1391(c) as to Kelly because she is a natural person who resides in this district.

## FACTUAL BACKGROUND

**A.      Cohesity's Business and the Company's Trade Secret and Confidential Information.**

7.      Founded in 2013, Cohesity is one of the largest and fastest growing providers of artificial intelligence-powered data security and data management software solutions.  Cohesity's products and services are designed to secure, protect, manage, and gain valuable insights and analytics from data stored in global computer networks across local, remote, edge, and cloud computing networks.  Cohesity provides its services to businesses, institutions, and government agencies with substantial data management needs in the United States and around the world.  This includes many of the world's most sophisticated and widely recognized companies, including nearly half of the companies on the Fortune 100 list.  Cohesity helps defend against cybersecurity threats with comprehensive data security and management capabilities, including immutable backup snapshots, artificial intelligence-based threat detection, malicious behavior monitoring, and rapid recovery at scale.

8.     Cohesity has created innovative, cutting-edge enterprise backup and recovery solutions.  As explained by Gartner,[1] a leading technology research and insight firm, enterprise backup and recovery solutions help enterprises with large and expansive amounts of business-critical data protect these workloads by capturing a point in time copy (backup) of enterprise data for the primary purpose of recovering it in the case of loss.  These solutions allow enterprises to recover vital data that might otherwise be lost in an accidental, malicious, or environmental event.  Thus, Cohesity's data backup and recovery solutions allow enterprises to ensure business continuity, avoid considerable downtime, lost revenue, diminished capacity, and the risk of regulatory fines during a potential data-loss event.

9.     Cohesity's technologies have been recognized by top industry organizations for its high-quality and have earned numerous rankings and recognitions year over year, including:

a.  named to the Forbes 2024 Cloud 100, the definitive ranking of the top 100 private cloud companies in the world;

b.  named as a Leader in the Gartner Magic Quadrant for Enterprise Backup and Recovery Software Solutions for four years in a row;

c.  named in the Gartner Peer Insights Customers' Choice for Enterprise Backup and Recovery Software Solutions for six years in a row;

d.  named HPE Global Momentum Technology Partner of the Year;

e.  among CRN's Security 100, Storage 100, and Cloud 100 Companies for 2024;

f.  among CRN's inaugural AI 100 Companies for 2024;

g.  earned a five-star rating in CRN's 2024 Partner Program Guide for five years in a row;

h.  named a Leader in the IDC MarketScape for Worldwide Cyber Recovery;

i.  selected in D.A. Davidson & Co.'s The Heard report for 2024, recognizing the top 100 private software companies globally;

---

[1] https://www.gartner.com/reviews/market/enterprise-backup-and-recovery-software-solutions.

j.   awarded the NorthFace Scoreboard Award for excellence in customer service for eight years in a row;

k.   named the Gold Winner for Best User Interface at the 2023 London Design Awards;

l.   designated a 2023 Leader in the Omdia Universe: Protecting and Recovering Data in the Cloud Era, 2022–23 report;

m.   ranked among the top four vendors in the industry and as an Outperformer in the 2023 GigaOm Radar Report for Enterprise Scale-Out File Systems; and

n.   named a Leader in The Forrester Wave: Data Resilience Solution Suites, Q4 2022 report.

10.   Cohesity devotes a tremendous amount of time and resources to evaluating each customer's needs in order to provide bespoke product recommendations specifically tailored to offer robust data protection in the customer's unique environment.  In addition, Cohesity closely compares its market presence to its competitors to determine how best to direct and expand its business and product offerings.  Cohesity's strategic business planning plays an instrumental role in the success of Cohesity's overall business.  The information collected as part of this process as well as Cohesity's comprehensive sales strategy constitutes Cohesity's trade secrets because it is not public, gives Cohesity a competitive edge in the marketplace and derives independent economic value from being kept confidential from third parties.

11.   Through this process and with the use of its trade secrets, Cohesity has identified and built relationships with customers through years of work, including Nasdaq, Nationwide Insurance, Delta Airlines, AutoNation, Salesforce, Phillips 66, Broadcom, NEC, and several top U.S. banks.

12.   Cohesity's yearslong presence in the data security industry has allowed it to acquire the information necessary to understand the broad range of customers requiring data security services, unique customer needs, and how market values and fluctuations impact the ability of Cohesity to market and sell its products.

13.     In the course of building and maintaining relationships with its customers, Cohesity acquires distinct information about the attributes of each customer with which it does business and with which it has had communications, including each customer's unique data security needs; current and historical utilization and pricing information related to the customer's use of Cohesity products; contact information for individuals at the customer's business who are in a position to make decisions about individual and nationwide purchases; contractual terms with customers; and projections of future product purchases.

14.     There are no publicly available lists of, and no publicly available means to obtain, customer information containing the detailed information Cohesity collects and uses in its business operations.

15.     This unique customer information derives independent economic value and gives Cohesity a competitive advantage from not being known to or by its competitors.

16.     Similarly, through significant effort and expense, Cohesity has additionally developed trade secret and confidential pricing strategies to help negotiate contracts and pricing with its customers.  Cohesity's pricing strategies are built upon an individual assessment of each customer and a broader assessment of similar customers with whom Cohesity does business.

17.     In this regard, Cohesity develops a pricing strategy for its products by, among other things, drawing on its experience with other similarly situated customers, analyzing each particular customer's specific needs, and providing tailored offerings to each customer.  These strategies have given Cohesity a competitive edge over other companies that provide a similar products, including one of its main competitors, Rubrik, Inc. ("Rubrik").

18.     Cohesity has also expended substantial effort and resources in developing and implementing training programs and sales strategy materials.  These resources assist Sales Engineers and Account Executives in the field with marketing, selling, and uniquely positioning Cohesity's products, such as responding to customer questions, distinguishing Cohesity's products from its competitors' products, and understanding the value drivers and differentiators of Cohesity's products.

19.     For example, Cohesity has developed internal assessments and related presentations regarding the value drivers and differentiators of its products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analyses of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detail strategies for positioning Cohesity against its competitors; and employee lists with contact data constitute trade secrets and confidential and proprietary information that are not available to the public and cannot be easily ascertained or developed.

20.     Cohesity's trade secrets and its confidential and proprietary information give it an edge over its competitors and derive value because they are kept a secret.

**B.      Cohesity Takes the Steps Necessary To Protect Its Trade Secrets and Confidential Information.**

21.     Cohesity takes the steps necessary to protect the secrecy of its trade secrets and confidential and proprietary information, especially information concerning its pricing strategies, contract terms, marketing and sales protocols, market-and customer-targeting strategies, and market development information.

22.     Cohesity uses a variety of controls to regulate access to its electronically stored data and communications to protect the security and confidentiality of its sensitive information.

23.     For example, employees given access to Cohesity's trade secrets and other confidential and proprietary information are required to execute a Proprietary Information & Confidentiality Agreement ("Confidentiality Agreement") containing provisions protecting Cohesity's confidential information.

24.     The Confidentiality Agreement requires employees to hold in strictest confidence, and not to use, except for the benefit of the Cohesity, or to disclose to any person, firm or corporation any confidential information of the Cohesity, including after their employment ends.

25.     To avoid all doubt, the Confidentiality Agreements explains that it applies to all non-public information of Cohesity.  Because Cohesity's ability to sell its products and services to customers is at the heart of its business, the Confidentiality Agreement expressly states that it applies to information relating to pricing lists or strategies, customers lists and customers, customer buying and selling habits and special requirements.

26.     Additionally, the Confidentiality Agreement requires employees to return all property, including all proprietary information belonging to Cohesity, at the end of their employment.

27.     Cohesity further has developed and implemented policies designed to protect the Company's confidential and trade secret information.  For example, the Cohesity U.S. Employee Handbook explains that employees "cannot use or disclose proprietary information except as authorized by Cohesity" both during employment and after employment has ended.

28.     Similarly, in the Cohesity Code of Conduct, employees are reminded that they may only "[u]se confidential information only as authorized and do not share it with anyone who is not authorized to see it—including other Cohesity personnel."  Here, again, Cohesity explains that its confidential information includes "product development and business plans," "financial data," "pricing strategies," and "marketing plans," among other categories.  Consistent with its other policies, the Code of Conduct states that employees' "obligation to protect confidential information continues even after your employment or contract with Cohesity ends."

29.     The Code of Conduct is supplemented by the Acceptable Use Policy and Standard ("Use Policy"), which applies to all Cohesity employees.  The Use Policy sets clear guidelines for how Cohesity employees can interact with Cohesity's confidential information stored on physical devices owned by Cohesity and on the Company's network.

30.     The Use Policy provides that activities that impact confidentiality and integrity of information assets are unacceptable, including:

> a.   "Actions that bypass information system or network security controls, directly or indirectly;

    b.  Use of information assets that are out of compliance with the Code of Conduct or Information Security Policy;

    c.  Creating, sending, processing, downloading, or otherwise interacting with files, software, systems, or information that are not aligned with Cohesity business activities or requirements;

    d.  The use of Universal Serial Bus ("USB") devices, including flash drives, external hard drives, and other removable storage media, is prohibited unless explicitly authorized by the IT department or designated personnel; and

    e.  Storing, forwarding, synchronizing, or other sharing of Cohesity emails, documents, data, or other Company information to unauthorized third-party systems or devices (e.g., to personal email accounts such as Yahoo, G-Mail, Hotmail, etc., to personal document management systems such as DropBox, Box, Google-drive, etc., to services run by unapproved vendors, or to memory cards)."

31.    Through its various policies and practices, Cohesity repeatedly communicates to employees that unauthorized disclosure and misuse of its confidential information is strictly prohibited.

32.    Cohesity also uses electronic controls to limit access to its confidential and proprietary information, such as requiring passwords to access Company computers and confidential information, and other controls that block unauthorized software installation and certain access to sensitive information.

33.    Cohesity limits its sensitive and proprietary information to only those employees who require the information to perform their duties.  For example, Cohesity maintains folder level restrictions for materials stored on the Company's shared network drive.  Employees are only given access to the materials necessary to perform their job duties.

**C.      Kelly Agreed To Never Disclose Cohesity's Trade Secrets and Confidential Information in an Unauthorized Manner.**

34.      In December 2024, Cohesity acquired Veritas Technologies LLC ("Veritas"), an enterprise data protection business.  As part of the acquisition, Cohesity onboarded many Veritas employees to continue to support and sell Veritas's signature products, including NetBackup, to Cohesity and Veritas customers.

35.      Kelly joined Cohesity as part of the acquisition on or about December 10, 2024.

36.      As part of her transition to Cohesity, Kelly's employment was governed by the Employee Handbook, which required her to adhere to all Company policies, including but not limited to Cohesity's Code of Conduct.

37.      As a condition of providing her with access to the Company's trade secrets and other confidential business information, Cohesity required Kelly to sign its Confidentiality Agreement.

38.      On February 25, 2025, Kelly executed her Confidentiality Agreement.  Among other things, Kelly agreed as part of the Confidentiality Agreement to "hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company."

39.      Kelly further acknowledged that the agreement extended to:

> any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding Company's products or services and markets therefor, pricing lists or strategies, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my service), the non-public names and addresses of the Company's customers and suppliers, their buying and selling habits and special requirements, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, personnel information, financial

information of the Company (including financial performance and metrics) or any other business information.

40.     At no point in time did Kelly request or obtain permission from Cohesity to acquire, disclose, or use Cohesity's confidential and proprietary information for any personal reason.

41.     Kelly also agreed in her Confidentiality Agreement that "at the time of leaving the service of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items . . . otherwise belonging to the Company."

42.      Under the terms of the Confidentiality Agreement, Kelly "agree[d] that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to leave their service or cease providing services to the Company, or take away such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity."

**D.     Kelly Had Access to Cohesity's Most Sensitive Business Information.**

43.     Cohesity typically goes to market with a two-person team: an Account Executive who owns the account relationship and overall sales responsibility and a Sales Engineer who is tasked with presale activities, including evaluating a customer's unique needs and proposing technical solutions to meet those requirements.  These roles report into separate second line managers, who are responsible for all aspects of Cohesity's client-facing services.

44.     Kelly joined Cohesity as part of the Veritas acquisition as a Senior Director of East Enterprise.  In this role, Kelly directly oversaw the Sales Engineers servicing Cohesity's enterprise customers.

124444644.6

45.     In August 2025, Kelly became a Senior Director, Sales Engineering.  In this position, Kelly had ultimate responsibility for Cohesity's largest strategic customers in the eastern United States and the 16 Sales Engineers servicing them.

46.     Kelly's core duties in both of her roles included developing account strategy for the Company's most significant customer accounts, shaping how Cohesity engaged its customers to expand or win business at new and existing accounts, and ensuring that the Sales Engineers reporting to her executed according to the strategies set by Kelly and other business leaders.

47.      In these roles, Kelly had broad access to Cohesity's trade secrets, including its confidential and proprietary information about customers, customer needs, pricing, strategic selling objectives, new product proposals, profit margin and yield information, and future business planning.

48.     Cohesity also provided Kelly with access to its institutional knowledge so that she could effectively strategize, promote, and sell Cohesity's suite of products.

49.     Kelly's leadership role required deep familiarity with Cohesity's product capabilities and competitive differentiators.  Cohesity provided Kelly with access to its highly coveted trade secrets, including presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data.

50.     Kelly's job required that she help prepare and use a range of sensitive, nonpublic materials describing Cohesity's installed-base environments, account strategies, and competitive positioning, including documents that detail how strategic and enterprise customers deploy Cohesity's products and how Cohesity plans to expand those relationships.

51.     The materials referenced in the paragraphs above included internal documents covering existing installations, customer usage patterns, and system architectures as well as sales campaign documents outlining go-to-market plans in her territory.

52.     Kelly further supported her Sales Engineers by cultivating relationships with key customer contacts, including at the executive level, and representing Cohesity in key sales meetings.

53.     These exclusive customer contacts as referenced in paragraphs 47-52 provided Kelly with special insight into problems faced by Cohesity's customers.  This insight, combined with Kelly's understanding of Cohesity's products, enabled Kelly to craft and refine technical and commercial messaging for customers, build bespoke value propositions, address questions about product features, and differentiate Cohesity from competitors to drive customers to select Cohesity's products as the necessary technical solution.

54.     Cohesity shared this information with Kelly by, among other things, sending her electronic and hard-copy documents, giving her access to Cohesity's trade secrets stored on the Company's network and available on her computer, and by assigning her the responsibility of overseeing and directly engaging in sales activities such that she became aware of the terms and conditions under which Cohesity sold its products to customers.

**E.     Kelly Misappropriated Cohesity's Trade Secrets and Breached Her Contractual Obligations to Cohesity.**

55.     Cohesity is informed and believes and on that basis alleges that Kelly accepted an employment offer with a competing data security company, Rubrik, on or around December 19, 2025 to become a Vice President.

56.     Cohesity is informed and believes that Kelly and Rubrik entered into employment discussions in and around late November 2025 or early December 2025.

57.     Kelly knew that her senior leadership role at Cohesity, extensive knowledge of and unique access to Cohesity's product offerings, pricing terms, and sales strategies for its

largest customers—including customers that have had relationships with Rubrik—would be attractive to Rubrik.

58.     Following her initial conversations with Rubrik, Cohesity is informed and believes that Kelly hatched a plan to identify and download critical confidential documents and key trade secrets that she could rely on in interviews and to take with her to Rubrik once she secured a job with that competing organization.

59.     Cohesity is informed and believes that Kelly had a panel interview with Rubrik on or about December 17, 2025.  Just days before this panel interview, and after Kelly had already engaged in discussions with Rubrik, Cohesity is informed and believes that Kelly effectuated her unlawful scheme against Cohesity, and engaged in efforts to download and abscond with Cohesity's trade secrets and other confidential and proprietary information so that she could more effectively compete with the Company once she started working at Rubrik.

60.     For example, on or about December 11, 14, and 15, Cohesity is informed and believes that Kelly accessed and potentially copied a targeted set of Cohesity's critical files, including Cohesity's most sensitive confidential documents and trade secrets.  Her conduct, as revealed by Cohesity's evaluation of her computer and network activity, is consistent with accessing and uploading Cohesity files to her personal Google drive, for example.

61.     Similarly, Cohesity's forensic evaluation showed that Kelly downloaded documents on to an external drive that, on information and belief, include Cohesity materials.

62.     Also on or about December 14 and continuing on December 15, Kelly selected dozens of emails to forward to her personal, non-Cohesity email account (laurkelly1021@gmail.com).  These emails contained a variety of sensitive sales and business strategy documents and other client specific material, including (1) non-public, customer-specific pipeline data and targeting strategies (including named priority accounts, sequence of executive outreach, and conversion tactics); (2) proprietary sales proposals and proposal architectures to disrupt competitors' relationships with target customers and convert customers to Cohesity's

products; and (3) internal performance dashboards and forecast methodologies, to forward to her personal email address for use at Rubrik.

63.     Several of the key business strategy documents that Kelly sent to her personal email included key details of competitive accounts on which Rubrik and Cohesity are currently doing business, and competing for priority, including significant business accounts where Kelly is acting as Cohesity's lead employee.  Cohesity is informed and believes, including based on its internal assessment of activity, that Kelly had not previously shared Cohesity's confidential information to her accounts (i.e., her personal email account), and there was no business reason for her to do so (i.e., for her to use personal accounts as opposed to Cohesity accounts) in December 2025.

64.     On January 5, 2026, Kelly had a telephone call with Vice President of Sales Engineering, Bob Mill. During that conversation, Kelly informed Mr. Mill for the first time that she was resigning from Cohesity and had accepted a position with a competitor.

65.     During this conversation, Kelly did not notify Mr. Mill that she had copied any Cohesity documents and exported them to her personal devices and did not notify him that she had accepted a position at Rubrik at least a week earlier.

66.     On January 6, 2026, Kelly signed Cohesity's exit certification, which is part of Cohesity's standard offboarding procedure and required under the terms of the Confidentiality Agreement.

67.     Although she had already exported a significant volume of confidential documents belonging to Cohesity, Kelly falsely certified that "I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Cohesity, Inc."

68.     Kelly further promised that, in compliance with the Confidentiality Agreement, she would "preserve as confidential all trade secrets, confidential knowledge, data or other

- 14 -

proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees."

69.     By signing the exit certification, Kelly also renewed her commitment not to solicit any of Cohesity's employees to leave their employment.

70.     Based on information and belief as alleged throughout this complaint, Kelly's representations that she would continue to adhere to her contractual and legal obligations were false.

71.     On January 9, 2026, as part of the Company's standard process of evaluating employee activity following a resignation to join a competitor, Cohesity's IT Department evaluated several aspects of Kelly's pre-departure activities and interactions with Cohesity's computer network. More specifically, the IT Department reviewed Kelly's end point events, OneDrive file interactions, Office 365 audit logs, email forwarding activity, and Zscaler network traffic.

72.     During this evaluation, the IT Department began to uncover certain elements of the Kelly's misappropriation of Cohesity material, which misappropriation began as early as December 11 and ran through at least December 23, 2025. Based on its preliminary investigation, Cohesity is informed and believes that Kelly had engaged in a plan to identify, copy, and misappropriate Cohesity's valuable trade secret and confidential information by exporting data to various sources, including potentially to an external drive and/or her personal cloud storage system, and as confirmed by Cohesity's IT Department, to her personal email.

73.     On information and belief, Cohesity alleges on information and belief that Kelly's scheme and her disregard of contractual commitments, remains ongoing.

74.     For example, in addition to taking and retaining Cohesity's trade secrets, the Company is informed and believes that, within days of Kelly resigning her position with

124444644.6

Cohesity, a Sales Engineer with whom Kelly has an extensive working relationship also resigned to join Rubrik. Cohesity is informed and believes that Kelly may have solicited, induced, or encouraged this employee to leave Cohesity and join her at Rubrik in violation of her contractual and fiduciary obligations.

**F.    Kelly Disclosed Cohesity's Confidential and Trade Secret Information to Rubrik.**

75.    On information and belief, Kelly used and disclosed Cohesity's confidential and proprietary information as well as trade secrets to Rubrik to secure her employment and advance Rubrik's interests. For example, on or about December 17, 2025, Cohesity is informed and believes that Kelly met with a panel of Rubrik sales department leaders just days after she downloaded Cohesity's sensitive business materials and trade secrets.

76.    Cohesity is informed and believes that Kelly disclosed this confidential, proprietary and trade secret document to the Rubrik employees she met with on December 17 to demonstrate the type of knowledge and trade secret information she was bringing with her from Cohesity, and how she could use such trade secret information to advance Rubrik's interests.

77.    Cohesity is informed and believes that Rubrik offered Kelly the Vice President position on or about December 19, 2025 and Kelly accepted the position. Prior to informing Cohesity of her resignation, Cohesity uncovered evidence that Kelly sent to her personal email an email detailing sales strategy and attaching a confidential document providing talking points for Sales Engineers to highlight differentiation between Cohesity's and market competitors' product offerings and capabilities.

78.    On information and belief, Cohesity alleges that Kelly unlawfully misappropriated Cohesity's confidential and proprietary information as well as trade secrets by using it and/or disclosing it with her employment with Rubrik, a direct competitor of Cohesity.

**G.    Kelly Continues to Possess, Use, and Disclose Cohesity's Trade Secrets and Confidential and Proprietary Information.**

79.    Taken as a whole, the documents Kelly accessed and surreptitiously misappropriated present a comprehensive roadmap that would provide a competing business

with information it would need to compete with Cohesity for certain of its most significant customers. This information includes the identity of particular customers for a company to target, detailed non-public information about the nature and volume of customer business, business planning, contract terms, strategic objectives and customer targeting, and sales training material and product implementation protocols.

80.     The trade secrets and confidential and proprietary information misappropriated by Kelly provides all the information necessary for Kelly, in connection with her employment with Rubrik, to undercut and unfairly compete with Cohesity for Cohesity's key customers.

81.     Cohesity is informed and believes, and on that basis alleges that armed with Cohesity's confidential and proprietary information, Kelly has and will continue to compromise Cohesity's position in the data protection market.  Cohesity is informed and believes, and on that basis alleges that Kelly's wrongful conduct includes, but is not limited to, absconding with and using Cohesity's confidential information, and refusing to return Cohesity's trade secrets and other confidential and proprietary information upon the termination of Kelly's employment.

## COUNT ONE: TRADE SECRET MISAPPROPRIATION UNDER DTSA

82.     Cohesity hereby realleges and incorporates by reference paragraphs 1 through 81 above.

83.     The facts alleged in this Complaint, and as further detailed in paragraphs 55 through 81, constitute actual and threatened misappropriation of Cohesity's trade secrets by Kelly pursuant to 18 U.S.C. § 1836, *et seq.*

84.     Cohesity is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate foreign commerce.

85.     Cohesity's trade secrets consists of presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of

Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data. Moreover, upon information and belief, Kelly gained unique, non-public and confidential insight into how Cohesity competes in the marketplace and distinguishes itself from its competitors.

86.    The information identified above and in this Complaint has independent economic value because it is not generally known to Cohesity's competitors or potential competitors, and it is not known in the industry. Cohesity has developed these trade secrets over time and through substantial expenditure of resources, and Cohesity has obtained a competitive advantage from these trade secrets.

87.    Cohesity has taken reasonable steps to maintain the secrecy of trade secrets by, among other things, using a variety of controls to regulate access to its hard copy and electronically stored data to protect the security and confidentiality of its sensitive information, requiring all employees to sign a confidentiality agreement, and enacting and enforcing policies and procedures designed to protect the Company's confidential and proprietary information.

88.    Kelly became aware of Cohesity's trade secrets only by virtue of her employment with Cohesity.

89.    Kelly misappropriated Cohesity's trade secrets by improper means, including taking the actions alleged in this Complaint. Those actions include, among other things, downloading a significant volume of confidential, proprietary and trade secret files from Cohesity's network and copying, transferring and storing the documents Kelly downloaded to non-Cohesity locations, such as external drives, email, and/or cloud-based storage accounts. Kelly had a duty to maintain the secrecy of Cohesity's trade secrets. Cohesity did not consent to Kelly's disclosure or Kelly's use of Cohesity's trade secrets. Cohesity alleges on information and belief that Kelly continues to disclose and use Cohesity's trade secrets to unlawfully compete with Cohesity.

90.     By reason of Kelly's acts alleged herein, Cohesity has and will suffer damages to its business and the loss of sales and profits the Company would have made but for Kelly's acts. Furthermore, Cohesity alleges on information and belief that Kelly has used Cohesity's misappropriated trade secrets to unjustly enrich herself, entitling Cohesity to damages above and beyond Cohesity's actual loss.

91.     Kelly's misappropriation of Cohesity's trade secrets was for improper financial gain, has been willful and malicious, and entitles Cohesity to an award of exemplary damages and attorneys' fees and costs.

92.     Cohesity has suffered irreparable harm as a result of the activities alleged herein and will continue to suffer irreparable harm that cannot adequately be remedied at law unless Kelly is enjoined from engaging in any further such acts of unfair competition.

## COUNT TWO: TRADE SECRET MISAPPROPRIATION UNDER NEW JERSEY TRADE SECRETS ACT

93.     Cohesity hereby realleges and incorporates by reference paragraphs 1 through 92 above.

94.     Cohesity is the owner of valuable trade secrets.  Cohesity's trade secrets consists of presentations and documents regarding the value drivers and differentiators of Cohesity's products and services; non-public information about how the Company conducts its business; highly confidential information about Cohesity's customers; detailed insider knowledge about the Company's future business plans; confidential presentations about how to win business from Cohesity's competitors; comparative analysis of Cohesity's competitors; detailed customer lists, reflecting sales projections and pricing information; competitive metrics; strategic selling presentations which detailed strategies for positioning Cohesity against its competitors; and employee lists with contact data.  Moreover, upon information and belief, Kelly gained unique, non-public and confidential insight into how Cohesity competes in the marketplace and distinguishes itself from its competitors.

95.     The information identified above and in this Complaint has independent economic value because it is not generally known to Cohesity's competitors or potential competitors, and it is not known in the industry.  Cohesity has developed these trade secrets over time and through substantial expenditure of resources, and Cohesity has obtained a competitive advantage from these trade secrets.

96.     Cohesity has taken reasonable steps to maintain the secrecy of trade secrets by, among other things, using a variety of controls to regulate access to its hard copy and electronically stored data to protect the security and confidentiality of its sensitive information, requiring all employees to sign a confidentiality agreement, and enacting and enforcing policies and procedures designed to protect the Company's confidential and proprietary information.

97.     Cohesity provided Kelly with access to its trade secrets while she was employed by Cohesity and subject to Cohesity's confidentiality restrictions.  Kelly had a duty to maintain confidentiality and not to use for any of her own purposes, or others' purposes, the trade secrets to which she had access pursuant to her employment with Cohesity.

98.     Kelly acquired, disclosed, and upon information and belief used Cohesity's confidential, proprietary, and trade secret information without the express or implied consent of Cohesity.  Those actions include, among other things, downloading a significant volume of confidential, proprietary and trade secret files from Cohesity's network and copying, transferring and storing the documents Kelly downloaded to non-Cohesity external drives, email, and/or cloud-based storage accounts. Kelly had a duty to maintain the secrecy of Cohesity's trade secrets. Cohesity did not consent to Kelly's disclosure or Kelly's use of Cohesity's trade secrets.

99.     Upon information and belief, Kelly acquired, disclosed, and/or used Cohesity's confidential, proprietary, and trade secret information in connection with her employment with Rubrik.

100.    The aforementioned collective acts by Kelly in misappropriating Cohesity's trade secret information were intentional, knowing, willful, malicious, fraudulent, and oppressive.  The

actions of Kelly, as set forth herein, constitute misappropriation under the New Jersey Trade Secrets Act, N.J. Stat. Ann. §§ 56:15-1 through 56:15-9.

101.    As a direct and proximate result of Kelly's actions, Cohesity has been greatly damaged, has suffered irreparable harm, and continues to suffer irreparable harm.

102.    If not enjoined by this Court, Kelly will continue to benefit from the misappropriation and use of Cohesity's trade secret information, causing Cohesity continued irreparable harm, damage, and injury.

## COUNT THREE: BREACH OF CONTRACT

103.    Cohesity hereby realleges and incorporates by reference paragraphs 1 through 102 above.

104.    Kelly entered into valid and binding contracts with Cohesity, including the Confidentiality Agreement.  Kelly agreed to the terms of the agreements with Cohesity in exchange for good and valuable consideration.

105.    Cohesity has performed all of its contractual obligations owed to Kelly under the terms of the Confidentiality Agreement.

106.    Kelly has unjustifiably and inexcusably breached, and continues to breach her agreements with Cohesity, including the Confidentiality Agreement by, among other things and at a minimum: (a) divulging or conveying to others information, knowledge, data, and/or property relating to Cohesity's business, including but not limited to, Cohesity's confidential, proprietary, and trade secret information; (b) failing to return Cohesity's property on termination of employment; and (c) using Cohesity's confidential, proprietary, and trade secret information after her termination of employment.

107.    As a direct and proximate result of these breaches of Kelly's employment agreements, including the Confidentiality Agreement, Cohesity has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm.

124444644.6

## COUNT FOUR: UNFAIR COMPETITION

108.    Cohesity hereby realleges and incorporates by reference paragraphs 1 through 107 above.

109.    Kelly has no right to possess, maintain, or use any of Cohesity's confidential, proprietary, and trade secret information.

110.    Upon information and belief, Kelly utilized and relied upon Cohesity's confidential, proprietary, and trade secret information to conduct business that is competitive with Cohesity, and to gain a competitive advantage over Cohesity, and Kelly has engaged in unfair competition.

111.    Kelly willfully and maliciously took the actions described above and in this Complaint with knowledge of and disregard for Cohesity's rights and with the intention of causing harm to Cohesity for her own benefit.

112.    As a direct and proximate result of the aforementioned conduct Cohesity has been damaged and has suffered irreparable harm, and continues to suffer significant irreparable harm.

## PRAYER FOR RELIEF

Cohesity prays for the following relief against Kelly:

1.    A judgment entered in favor of Cohesity and against Kelly;

2.    An award of damages sufficient to compensate Cohesity for the harms caused by Kelly's unlawful acts;

3.    An award of exemplary and/or punitive damages to deter Kelly and similarly situated defendants from engaging in the types of harm alleged here;

4.    An order requiring Kelly to return to Cohesity all of Cohesity's confidential, proprietary, and trade secret information in Kelly's possession;

5.    A preliminary and permanent injunction, enjoining Kelly and those in concert with her from any further commission of, or participation in, the unlawful acts alleged here, including

but not limited to a preliminary and permanent injunction that enjoins Kelly from calling on customers with whom she had contact with, obtained information about from Cohesity's trade secrets and customers that are identified in the specific materials that Kelly misappropriated, and a further injunction prohibiting Kelly and those in concert with her from using or disclosing Cohesity's trade secrets and other confidential information;

6.      An award of disgorgement of unjust enrichment obtained by Kelly through the unlawful acts alleged here;

7.      An award of Cohesity's reasonable attorney's fees and costs; and

9.      Any such other and further relief as the Court deems just and proper.

## JURY DEMAND

Cohesity hereby respectfully demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated: January 20, 2026                      DAY PITNEY, LLP


BY:           *HEATHER WEINE BROCHIN*
              Heather Weine Brochin
              hbrochin@daypitney.com

              8 Sylvan Way
              Parsippany, NJ  07054.3801
              Telephone:    +1.973.966.8199
              Facsimile:     +1.973.206.6115

              Attorneys for Plaintiff
              Cohesity, Inc.

124444644.6

Dated: January 20, 2026                    JONES DAY

By: _____

Steven M. Zadravecz
*Pro Hac Vice Application Forthcoming*
szadravecz@jonesday.com

3161 Michelson Drive, Suite 800
Irvine, CA  92612.4408
Telephone:    +1.949.851.3939
Facsimile:    +1.949.553.7539

Attorneys for Plaintiff
Cohesity, Inc.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the matter in controversy is not the subject of any other action currently pending in any court and is not the subject matter of any pending arbitration of administrative proceeding.

By: */s/ Heather Weine Brochin*
Heather Weine Brochin